Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered May 22, 2013. The judgment convicted defendant, upon a jury verdict, of criminal possession of a weapon in the second degree (two counts) and assault in the second degree.
It is hereby ordered that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]) and one count of assault in the second degree (§ 120.05 [2]). Defendant’s conviction stems from his conduct in shooting the victim, striking him in the buttocks. Defendant contends that the evidence is legally insufficient to establish that he was the shooter, that the weapon was operable, and that the victim sustained a physical injury. We reject those contentions. Two eyewitnesses identified defendant as the shooter and described the gun. Two cartridge cases were found at the scene, and the People’s expert testified that they came from one firearm. That evidence is sufficient to establish defendant’s identity and the operability of the firearm (see People v Ciola, 136 AD2d 557, *1611 557 [1988], lv denied 71 NY2d 893 [1988]). Although there were minor inconsistencies in the testimony of the eyewitnesses, those inconsistencies do not render their testimony incredible as a matter of law (see People v Harris, 56 AD3d 1267, 1268 [2008], lv denied 11 NY3d 925 [2009]). The People further established, through the testimony of the People’s witnesses and the victim’s medical records, that the victim sustained a physical injury inasmuch as he experienced “substantial pain” from the gunshot (.People v West, 129 AD3d 1629, 1631 [2015], lv denied 26 NY3d 972 [2015]; see People v Chiddick, 8 NY3d 445, 447 [2007]). Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant’s further contention that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
We reject defendant’s contention that the photo arrays were unduly suggestive and thus that Supreme Court erred in refusing to suppress the identification testimony (see generally People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]). All of the men in the photo arrays were of similar complexion, had similar haircuts and facial hair, and had a teardrop tattoo underneath the left eye, which was either computer-generated or drawn in ink. The fact that defendant was the only one wearing a hooded sweatshirt is of no moment considering that each man was wearing unique clothing. While the background of defendant’s photograph was darker than that of the other photographs, we conclude that “[t]he composition and presentation of the photo array [s] were such that there was no reasonable possibility that the attention of the witness [es] would be drawn to defendant as the suspect chosen by the police” (.People v Sylvester, 32 AD3d 1226, 1227 [2006], lv denied 7 NY3d 929 [2006]; see People v Boria, 279 AD2d 585, 586 [2001], lv denied 96 NY2d 781 [2001]; People v Floyd, 173 AD2d 211, 212 [1991], lv denied 78 NY2d 966 [1991]).
Contrary to defendant’s contention, the court did not err in denying his request for a missing witness charge with respect to two witnesses. Defendant failed to meet his initial burden of establishing that one witness would provide testimony favorable to the prosecution (see People v Simon, 71 AD3d 1574, 1575 [2010], lv denied 15 NY3d 757 [2010], reconsideration denied 15 NY3d 856 [2010]; People v Karas, 21 AD3d 1360, 1361 [2005], lv denied 5 NY3d 883 [2005], reconsideration denied 6 NY3d 814 [2006]; see generally People v Gonzalez, 68 NY2d 424, 427 [1986]), and the People established with respect *1612 to the other witness that his testimony would be cumulative to the testimony of the other witnesses (see People v Carr, 59 AD3d 945, 946 [2009], affd 14 NY3d 808 [2010]; People v Hawkins, 84 AD3d 1736, 1737 [2011], lv denied 17 NY3d 806 [2011]).
We agree with defendant that the court erred in refusing to give an adverse inference charge based on the People’s failure to preserve surveillance tapes (see People v Handy, 20 NY3d 663, 669 [2013]). Defendant used reasonable diligence in requesting those tapes, which captured “evidence that [was] reasonably likely to be of material importance” (id. at 665), i.e., a video in the area where the crime occurred, from cameras operated by the City of Rochester Police Department.
We respectfully disagree with our concurring colleague that the State’s duty to preserve surveillance videos is not triggered until a request has been made by the defendant. The Court of Appeals in Handy did not make any such pronouncement, but rather held that “when a defendant in a criminal case, acting with due diligence, demands evidence that is reasonably likely to be of material importance, and that evidence has been destroyed by the State, the defendant is entitled to an adverse inference charge” (id.). By way of further guidance, and of particular relevance to this case, the Court stated that “the authorities in charge should, when something that will foresee-ably lead to criminal prosecution occurs, take whatever steps are necessary to insure that the video will not be erased— whether by simply taking a tape or disc out of a machine, or by instructing a computer not to delete the material” (id. at 669). To conclude that the duty to preserve is not triggered until a request is made by the defendant would only give an incentive to State agents to destroy the evidence before the defendant has a chance to request the tapes. Such a rule would also directly contravene the explicit policy underlying the Court’s rationale in Handy, namely, to “give[ ] the State an incentive to avoid the destruction of evidence” and to “raise the consciousness of State employees on this subject” (id.).
Although we conclude that the court erred in failing to give the requested adverse inference charge, we further conclude that the error is harmless (see People v Bradley, 108 AD3d 1101, 1102 [2013], lv denied 22 NY3d 1039 [2013]). The evidence of guilt is overwhelming, and there is no reasonable possibility that the absence of an adverse inference charge contributed to the conviction (see People v Blake, 105 AD3d 431, 431 [2013], affd 24 NY3d 78 [2014]; see generally People v Crimmins, 36 NY2d 230, 237 [1975]).
*1613 Defendant failed to preserve for our review his contention that the court’s Sandoval ruling constitutes an abuse of discretion (see People v Tolliver, 93 AD3d 1150, 1151 [2012], lv denied 19 NY3d 968 [2012]; People v Jackson, 46 AD3d 1408, 1409 [2007], lv denied 10 NY3d 841 [2008]). In any event, we reject that contention. “[T]he court’s Sandoval compromise, in which it limited questioning on defendant’s prior convictions for [ ] related offenses to whether defendant had been convicted of a felony or misdemeanor on the appropriate date, ‘reflects a proper exercise of the court’s discretion’ ” (People v Stevens, 109 AD3d 1204, 1205 [2013], lv denied 23 NY3d 1043 [2014]). Defendant also failed to preserve for our review his contention that the indictment was multiplicitous because it charged criminal possession of a weapon in the second degree in more than one count (see People v Jefferson, 125 AD3d 1463, 1464 [2015], lv denied 25 NY3d 990 [2015]). In any event, that contention is without merit (see People v Simmons, 133 AD3d 1275, 1277 [2015]). We reject defendant’s further contention that we should reverse one of the two convictions of criminal possession of a weapon in the second degree in the interest of justice because the two counts were based upon his possession of the same weapon. We see no reason to do so inasmuch as the “two counts are separate crimes” (People v Rice, 5 AD3d 1074, 1074 [2004], lv denied 2 NY3d 805 [2004]). Finally, the sentence is not unduly harsh or severe.
All concur except Curran, J., who concurs in the result in the following memorandum.